[S. F. No. 6485.   In Bank.—December 17, 1914.]

W. H. BIAS, Administrator, with the Will Annexed, of the
Estate of Elizabeth Reed, Deceased, Respondent, v.
WILLIAM H. REED, Administrator, with the Will An-
nexed, of the Estate of James Reed, Deceased, et al.,
Appellants.

QUIETING TITLE—OPENING STATEMENT OF COUNSEL—DIRECTING VERDICT
UPON.—The practice of directing a verdict, in advance of the intro-
duction of evidence, upon the opening statement of one or the other
party, is a dangerous one, and an order granting such motion can be
upheld only where it is clear that counsel has undertaken to state
all of the facts which he expects to prove, and it is plainly evident
that the facts thus to be proved will not constitute a cause of action
or a defense, as the case may be. Where, however, these conditions
are complied with, the court is authorized to accept the statements
and admissions of counsel and to direct a verdict required by such
statements or admissions.

ID.—RULES ON REVIEW OF NONSUIT APPLICABLE TO ORDER DIRECTING
VERDICT—STATEMENT OF COUNSEL AND INFERENCES TO BE TAKEN AS
TRUE.—In reviewing an order directing a verdict on an opening state-
ment, the appellate court must apply rules analogous to those which
govern it in reviewing an order granting a nonsuit after the intro-
duction of evidence. Every fact which counsel has stated as among
the matters to be proved, together with all favorable inferences
reasonably to be drawn therefrom, must be accepted by the court
as facts which would have been proved if the case had been allowed
to be tried.

ID.—WHEN OPENING STATEMENT FULL AND COMPLETE.—Where, after
counsel had first outlined the facts to be proved by defendants,
plaintiff moved the court for a direct verdict, and counsel for de-
fendants declared his readiness "to argue that proposition right
now," whereupon the court directed that the reporter read over the
opening statement, suggesting that counsel for defendants might
have omitted something, and in response to this suggestion defend-
ants' counsel amplified his statement, and argument on the motion
proceeded, on the completion of which the court directed a verdict in
favor of plaintiff, under the circumstances, there is no ground for
the claim that the statement was made without an understanding of
the necessity for making it exhaustive or that any substantial fact
intended to be proved was omitted therefrom by inadvertence.

ID.—COMMUNITY PROPERTY—CONVEYANCE TO WIFE BY HUSBAND—
DIRECTED VERDICT HELD PROPERLY ON PLAINTIFF'S PRIMA FACIE
CASE AND OPENING STATEMENT OF DEFENDANTS.—In this action
CLXIX Cal.—3

between the respective administrators of the estates of a deceased wife and husband to quiet title to community property conveyed by the husband to the wife by a deed of gift executed and delivered many years prior to their death, which deed, after search, could not be found at the time of the death of the wife, but after the husband's death was found under the linoleum on the floor of the room which had been occupied by the decedents, it is held that plaintiff made out a clear *prima facie* case, and that it was not error for the court to direct a verdict in favor of the plaintiff after the opening statement of the defendants' counsel.

ID.—ESTOPPEL IN PAIS—INSUFFICIENCY OF FACTS TO CONSTITUTE.—In such a case, where the facts respecting the ownership of the property were as completely known to the husband as to the wife, and it is not claimed that the latter induced a mistaken belief regarding any such facts or that, if he was induced by her to believe that she "considered" the property to be community, was led by this belief to take or omit any action material to the protection of his interest, it being merely asserted that the wife "considered" the land to be community property, these facts fall far short of meeting the requirements of estoppel *in pais.*

ID.—GRANTOR REMAINING IN POSSESSION OF LAND—GRANTEE'S TITLE NOT AFFECTED BY UNLESS ADVERSE POSSESSION MAINTAINED.— Where a husband deeds community property to his wife, if the title passes, the fact that the grantor remains in possession of the land, farming it and paying taxes upon it, is not effective to weaken or impair the title of the grantee, unless he maintains an adverse possession in the manner and for the time required by the code.

ID.—JOINT OCCUPANCY—BASIS FOR PRESCRIPTIVE TITLE LACKING.—In such a case, where the land conveyed was occupied by both parties as their home, before and after the conveyance to the wife, the occupancy was a joint one, consistent with ownership by either husband or wife, and furnishes no basis for a claim of prescriptive title by one against the other.

ID.—SUBSEQUENT DEEDS BY GRANTOR TO THIRD PERSONS—ADVERSE CLAIM NOT SHOWN BY.—In such a case, the fact that the husband, after deeding the property to his wife, made deeds at various times to portions of the land to others without his wife joining in the conveyances, does not evidence a claim adverse to that of the wife, in the absence, at least, of proof that the husband's actions were known to the wife and that she did not assent to it.

ID.—CONVEYANCE NOT IMPAIRED BY SUBSEQUENT ACTS OR DECLARATIONS OF GRANTOR.—The force of an executed conveyance is not to be impaired by subsequent acts or declarations of the grantor.

ID.—MUTUAL DEEDS BY HUSBAND AND WIFE—INEFFECTUAL DELIVERY IN ESCROW—WIFE'S TITLE NOT IMPAIRED BY.—The fact that both the husband and wife, in such a case, after the conveyance by the husband to the wife, made deeds to each other of the property and

deposited them with a third person to hold and upon the death of either to deliver to the survivor the deed of the one so dying, which deed it is not claimed passed any title, cannot impair the wife's title to the property.

ID.—COMMUNITY AND SEPARATE PROPERTY—CHARACTER DETERMINED BY MODE OF ACQUISITION—SUBSEQUENT DECLARATIONS INEFFECTIVE TO CHANGE.—The character of the ownership of property, whether separate or community, is to be determined by the proof showing the mode of acquisition, rather than by any declaration of one of the parties that the property is or is not community property.

ID.—EVIDENCE—DECLARATIONS OF WIFE AS TO COMMUNITY PROPERTY— ADMISSIBILITY OF—INSUFFICIENT TO OVERCOME DEED.—While the declaration of the wife, in such a case, made in her will which was executed shortly before her death that the property was community property, and oral statements to the same effect made by her to different persons at various times, are admissible evidence against her or her successor in interest, such evidence standing alone cannot be deemed sufficient to overcome uncontradicted proof that the land was conveyed to her by her husband by means of a deed which, in express and elaborate terms, stated that she was to hold the land as her separate estate, the grantor relinquishing "all right or claim to the same or any part thereof as community property."

ID.—SEPARATE PROPERTY CAN BE CHANGED TO COMMUNITY ONLY BY AGREEMENT.—A declaration by the wife that the property was community estate might properly be regarded as having some weight, if supported by proof of other facts pointing in the same direction, or if the evidence regarding the acquisition of title was consistent with either the separate or community character of the ownership. But where the husband has conveyed the property to the wife by a deed which, by its express declarations, as well as by the presumptions of law, made the property her separate property, it could become community property thereafter only by an agreement between herself and her husband.

ID.—DECLARATION AGAINST INTEREST—ADMISSIBILITY OF DECLARATION BY GRANTEE THAT DEED EFFECTIVE ONLY ON GRANTOR'S DEATH.— Evidence of the declaration of a grantee made to a third person that the deed had been made and given by her husband with the understanding that it should not become effective unless the grantee should outlive her husband, is admissible as a declaration against interest if it militates in any way against the validity of the title of the grantee.

ID.—DELIVERY OF DEED—QUESTION OF FACT.—Whether or not a deed has been delivered, either to the grantee or to a depositary, is a question of fact.

ID.—MANUAL TRADITION ALONE INSUFFICIENT—INTENT TO PASS TITLE MUST EXIST.—A manual tradition of a deed is not sufficient, unless the passing of the paper is accompanied by the intent of presently

transferring title to the property, and be unhampered by the reservation of a right of revocation or recall.

ID.—WHEN DELIVERY OF DEED COMPLETE.—Any words or acts showing an intention on the part of the grantor that a deed shall be considered as completely executed and the title conveyed are sufficient. When a deed is executed and the minds of the parties to it meet expressly or tacitly, in the purpose to give it present effect, the deed is validly delivered.

ID.—CONDITIONAL DELIVERY OF DEED—CONDITION DISCHARGED BY DELIVERY TO GRANTEE.—If a deed is delivered to a third party, upon a condition which may, according to the outcome, make the transfer effective or nugatory, the delivery may be ineffectual; but where, as in this case, the delivery is made to the grantee, the condition is discharged, and the delivery is absolute, under section 1056 of the Civil Code.

APPEAL from a judgment of the Superior Court of San Mateo County. John Hunt, Judge presiding.

The facts are stated in the opinion of the court.

Edward F. Fitzpatrick, and Ross & Ross, for Appellants.

Charles M. Cassin, Harry J. Bias, James L. Atteridge, Sullivan & Sullivan and Theo. J. Roche, for Respondent.

THE COURT.—A hearing in Bank of this cause was ordered after judgment in Department One.

Upon further consideration of the questions involved we have reached the conclusion that the views heretofore expressed in Department are correct, and the Department opinion is hereby adopted as the opinion of the court in Bank. For the reasons stated in that opinion, the judgment is affirmed.

The following is a copy of the opinion of Department One:

"This is an action by the administrator, with the will annexed, of the estate of Elizabeth Reed, deceased, against the administrator, with the will annexed, of the estate of James Reed, deceased, and M. J. Perry, to quiet title to a tract of 152 acres of land in San Mateo County and to recover possession of the same from defendants, together with the value of the use and occupation thereof.

"James Reed and Elizabeth Reed, the testator and testatrix represented by the two administrators here contesting, were

husband and wife. The plaintiff's complaint alleged that, at the time of her death, and long prior thereto, his testatrix had been the owner of the tract in controversy. The defendants answered, denying that Elizabeth Reed had at any time been the owner of the property and asserting that James Reed had at all times until his death been the owner and in the possession of said property. Other matters, which so far as they are deemed important will be referred to hereafter, were set up by an amended answer.

"The action came on for trial before the court and a jury. The plaintiff introduced his evidence and submitted his case. Thereupon one of the attorneys for the defendants made an opening statement detailing the facts that the defendants intended to prove. Upon this statement the plaintiff moved the court to direct the jury to bring in a verdict in favor of the plaintiff and the court granted this motion. From the judgment entered pursuant to this verdict the defendants appeal.

"It is no doubt true, as is argued by the appellants, that the practice of directing a verdict, in advance of the introduction of evidence, upon the opening statement of one or the other party is a dangerous one and that an order granting such motion can be upheld only where it is clear that counsel has undertaken to state all of the facts which he expects to prove, and it is plainly evident that the facts thus to be proved will not constitute a cause of action or a defense, as the case may be. 'We would observe,' said this court in *Emmerson* v. *Weeks,* 58 Cal. 382, 'that it would be much better not to nonsuit on an opening statement unless it is clearly made, and it is evident therefrom that no case can be made out.' Where, however, these conditions are complied with, the court is authorized to accept the statements and admissions of counsel and to direct a verdict required by such statements or admissions. (38 Cyc. 1567; *Oscanyan* v. *Arms Co.,* 103 U. S. 261, [26 L. Ed. 539]; *Liverpool etc. S. S. Co.* v. *Immigration Comm's.,* 113 U. S. 33, [28 L. Ed. 899, 5 Sup. Ct. Rep. 352]; *Lindley* v. *Atchison T. & S. F. R. R. Co.,* 47 Kan. 432, [28 Pac. 201]; *Pratt* v. *Conway,* 148 Mo. 291, [71 Am. St. Rep. 602, 49 S. W. 1028].) In *Estate of McNeill,* 155 Cal. 333, [100 Pac. 1086], where conflicting petitions for letters of administration of the estate of a decedent were presented, the court, after hearing the proof in support of one of the petitioners and an opening statement on behalf of the other, non-

suited the latter and directed a verdict in favor of the former. The judgment was upheld on appeal, the court concluding that the facts offered to be shown on behalf of the appellant would not have entitled her to a grant of letters.

"In reviewing an order directing a verdict on an opening statement the appellate court must apply rules analogous to those which govern it in reviewing an order granting a nonsuit after the introduction of evidence. Every fact which counsel has stated as among the matters to be proved, together with all favorable inferences reasonably to be drawn therefrom, must be accepted by the court as facts which would have been proved if the case had been allowed to be tried.

"It is entirely clear from the record that the opening statement made by the appellants here was full and complete. After counsel had first outlined the facts to be proved, the plaintiff moved the court for the directed verdict. Counsel for the appellant declared his readiness 'to argue that proposition right now.' The court thereupon directed that the reporter read over the opening statement, suggesting that counsel for the appellants might have omitted something. In response to this suggestion appellants' counsel amplified his statement, whereupon argument on the motion proceeded, and as already stated, the court directed a verdict in accordance with the motion. Under these circumstances there is, of course, no ground for the claim that the statement was made without an understanding of the necessity for making it exhaustive or that any substantial fact intended to be proved was omitted therefrom by inadvertence. The further question, then, is whether the facts so offered to be proved, if accepted as true, were such as to have constituted any defense to the action.

"The plaintiff had introduced evidence tending to prove the following facts: Elizabeth Reed, the wife, died on December 19, 1908. James Reed, the husband, died on the nineteenth day of October, 1910. In July, 1883, James Reed owned the tract of land in question and other lands in San Mateo, all of said lands being community property. The property in controversy was occupied by Reed and his wife as their home. On July 21, 1883, Mr. and Mrs. Reed were visiting at the home of the plaintiff in Santa Cruz. At the request of James Reed, the plaintiff, Bias, accompanied Reed to the office of Z. N. Goldsby, an attorney at law then engaged in practice at

Santa Cruz. Reed stated to Goldsby that he desired to make a deed of the property to his wife. Goldsby wrote a deed of gift of the property in controversy and had such deed ready for execution on the afternoon of the same day, when Reed, accompanied by Mrs. Reed, Bias, and John D. Chace, returned to his office. At that time the deed was read over in the presence of these persons (except, perhaps, Mr. Chace) and Reed assented to it. Reed signed the deed and acknowledged it. At the same time a will in which Mrs. Reed was named as sole beneficiary was executed by Reed, Bias and Chace signing as attesting witnesses. They also signed as witnesses to the grantor's signature upon the deed. Prior to this time Mr. Goldsby had advised Reed that it was necessary to deliver the deed in order to vest title in his wife, and after the signing and acknowledgment of the paper Reed handed it to Mrs. Reed. The deed itself was introduced in evidence. The foregoing facts with reference to the signing and delivery of the deed were testified to by Bias and Goldsby. Chace had died prior to the trial. Mr. Goldsby further testified that at the time of the delivery nothing was said with reference to the deed not taking effect unless Reed died before his wife.

"Upon Mrs. Reed's death in 1908 search for the deed was made without avail. After James Reed's death a sister of Mrs. Reed prosecuted further inquiries and finally discovered the deed under the linoleum on the floor of the room which had been occupied by the Reeds. The plaintiff's case also included some testimony regarding declarations made by James Reed after the date of the deed in question and tending to support the wife's title. The possession of the land by the defendants was admitted.

"This was the state of the case when the defendants made their opening statement. The statement was somewhat protracted, but we think its substance is fairly contained in the following summary: Counsel, after stating that he would introduce deeds showing the acquisition of the property in question by James Reed, went on to state that he would prove that at various times after 1883 James Reed deeded portions of the land to various persons without having his wife join in the conveyances. He declared his intention of showing, further, that in 1901 Mr. and Mrs. Reed sent for one Levy and requested him to prepare deeds from Reed to Mrs. Reed

and from Mrs. Reed to Reed of all of the lands owned by either, including the tract in controversy. These deeds were subsequently prepared, were executed and acknowledged by the respective parties and were put in the possession of Levy, who was directed to hold them and upon the death of either Mr. or Mrs. Reed to deliver to the survivor for record the deed of the one so dying. A controversy subsequently arose between the Reeds and Levy, and the Reeds requested one Coburn to draw similar deeds to take the place of the two that had been deposited with Levy. This transaction, however, was never consummated. The opening statement went on to state that in December, 1908, shortly prior to Mrs. Reed's death, she made a will in which she declared that all of the property was community property. It was stated that the appellants would show that Mrs. Reed had stated to one Thompson, a physician, that the deed of July 21, 1883, 'was made and given to her with the understanding that it should not become effective unless she should outlive her husband.' Just prior to Mrs. Reed's death she requested Mr. Thompson to prepare a will for her and had declared that the property in question was the community property of herself and her husband, but no will was prepared by Mr. Thompson. Reference was made to other witnesses who would testify to oral declarations of Mrs. Reed that she considered the property community property; that she owned one-half of it and Mr. Reed the other half. Another witness, it was stated, would testify that in 1905 both Mr. and Mrs. Reed stated to him that the property was community property and that they had arranged their affairs so that whoever should outlive the other should get all the property. Counsel also undertook to show that at all times down to the death of Reed he had entire charge of the property, farmed it and paid all expenses in connection with it and during all this time the property had been assessed to and the taxes paid by him. The answer contains a plea of estoppel and with reference to this counsel incorporated into the opening a statement 'to the effect that Mrs. Reed, by her acts and conduct, intentionally led her husband to believe, and that he did believe that she considered all this property to be the community property of herself and her husband and not her separate property.' With reference to the matter last quoted it is quite obvious that the statement of counsel falls far short of meeting the requirements of

estoppel *in pais.* The facts with respect to the ownership of the land were as completely known to Reed as they were to his wife. It was not stated that she induced a mistaken belief regarding any such fact. All that counsel claimed was that Mrs. Reed led her husband to believe that she 'considered' the land to be community property. It is not apparent that her opinion of the legal *status* of the property could have any bearing upon her husband's rights or conduct, and the statement of counsel contains no intimation that Reed, if he was induced by her to believe that she 'considered' the property to be community, was led by this belief to take or omit any action material to the protection of his interests. Without further discussion of this question, we simply refer to *Boggs* v. *Merced M. Co.,* 14 Cal. 279, 367, 368, where the court, in considering the necessary elements of estoppel *in pais,* defined those elements in language which has been quoted and followed many times.

"That the plaintiff made out a clear *prima facie* case is not to be doubted. If the issues had been submitted to the jury on the plaintiff's evidence alone, the court could not properly have sanctioned a verdict in favor of the defendants. The question, then, is whether the matters which defendants declared they would prove—and which we must assume they were able to prove—were, in law, sufficient to meet or overcome the *prima facie* case established by the plaintiff.

"The fact that James Reed remained in possession of the land, farming it and paying taxes upon it, would not be effective to weaken or impair the title of his wife. If title had passed to her by a conveyance executed in 1883, no ownership or control asserted by her husband thereafter would revest title in him, unless he had maintained an adverse possession in the manner and for the time required by the code. There is nothing here to indicate that the possession was adverse at all. The tract was occupied by both parties as their home, before and after the conveyance to Mrs. Reed. The occupancy was consistent with an ownership by either husband or wife. It was, in fact, a joint occupancy, and could not, on the facts offered to be shown, furnish the basis for a claim of prescriptive title by one against the other. (*First Nat. Bank* v. *Guerra,* 61 Cal. 109; *Mauldin* v. *Cox,* 67 Cal. 387, [7 Pac. 804].) The same conclusion applies to the statement that James Reed had conveyed parts of the land after 1883.

Since the record title remained in him, this was a convenient mode of transfer, and it would not evidence a claim adverse to that of the wife, in the absence, at least, of proof that the husband's action was known to the wife and that she did not assent to it. The matters just discussed, which, as we have seen, did not make out a title by prescription, could certainly have had no effect as bearing directly upon the transaction of July 21, 1883. The force of an executed conveyance is not to be impaired by subsequent acts or declarations of the grantor.

"Another part of the opening statement had to do with the deposit with one Levy of deeds from Reed to his wife and from her to him. It is not claimed that any title passed by this transaction. (See *Kenney* v. *Parks,* 125 Cal. 146, [57 Pac. 772].) This being so, we are unable to see that the offered testimony tended in any way to meet the case already made by the plaintiff. The fact that the Reeds made an ineffectual attempt to provide for the transfer, upon the death of one of them, of all property owned by either to the survivor, does not indicate that any particular parcel of that property belonged to one, rather than the other, or that it was community property. The subsequent talk with Coburn, looking to a second arrangement of like kind, was never consummated, and is, of course, entitled to no greater weight than may be given to the deposit of the deeds with Levy.

"The opening statement contained, in addition to the various items already discussed, a promise to prove certain acts and declarations of Mrs. Reed. Counsel undertook to show that in her will, made shortly before her death in December, 1908, Mrs. Reed had declared that the property was community property. Oral statements to the same effect had been made by her to different persons at various times. This court has, on several occasions, expressed the view that the character of the ownership of property, whether separate or community, is to be determined by the proof showing the mode of acquisition, rather than by any declaration of one of the parties that the property was or was not community property. (*Estate of Grannis,* 142 Cal. 1, [75 Pac. 324]; *Estate of Learned,* 156 Cal. 311, [104 Pac. 315]; *Estate of Claiborne,* 158 Cal. 648, [112 Pac. 278].) It would seem, however, that such declaration is admissible in evidence against the declarant or his successors in interest. (*In re Bauer,* 79 Cal. 304, [21 Pac. 759].)

In the very recent case of *Estate of Hill,* 167 Cal. 59, [138 Pac. 690], the admissibility of such declarations was asserted in an opinion which had the concurrence of only three members of the court, three of the remaining justices joining in the judgment upon grounds which did not require them to state their views on this point. But, assuming the admissibility of Mrs. Reed's declarations that the property was community, we think this evidence standing alone cannot be deemed sufficient to overcome the uncontradicted proof that the land was conveyed to her by her husband by means of a deed which, in express and elaborate terms, stated that she was to hold the land as her separate estate, the grantor relinquishing 'all right or claim to the same or any part thereof as community property.' A declaration that the property was community estate might properly be regarded as having some weight, if supported by proof of other facts pointing in the same direction, or if the evidence regarding the acquisition of title were consistent with either the separate or community character of the ownership. But under the evidence which had been here introduced, the husband had conveyed the property to the wife by a deed which, by its express declarations, as well as by the presumptions of law (*Estate of Klumpke,* 167 Cal. 415, [139 Pac. 1062]), made the property her separate estate. It could become community property thereafter only by an agreement between herself and her husband. (Civ. Code, secs. 158, 159; *Yoakum* v. *Kingery,* 126 Cal. 33, [58 Pac. 324].) There was no offer to prove either a conveyance by her or an agreement with her husband. It having been clearly shown that the property had been acquired by her as her separate estate, her mere declaration that it was community would not, we are satisfied, be enough to sustain a finding that she had conveyed to her husband or had agreed with him that it should belong to the community.

"The only remaining piece of evidence which defendants announced their intention of introducing consisted of the declaration of Mrs. Reed to Mr. Thompson that the deed of July 21, 1883, had been made and given with the understanding that it should not become effective unless she should outlive her husband. As a declaration against interest this was admissible if the fact thus stated by Mrs. Reed militated in any way against the validity of the title claimed by plaintiff as her administrator. We think the alleged fact could

have no such operation. Whether or not a deed has been delivered, either to the grantee or to a depositary is a question of fact. A manual tradition of the instrument is not sufficient, unless the passing of the paper is accompanied by the intent of presently transferring title to the property, and be unhampered by the reservation of a right of revocation or recall. (*Follmer* v. *Rohrer,* 158 Cal. 758, [112 Pac. 544].) 'No precise form of words and no particular character of act is necessary. . . . Any words or acts showing an intention on the part of the grantor that the deed shall be considered as completely executed and the title conveyed are sufficient. When a deed is executed and the minds of the parties to it meet, expressly or tacitly, in the purpose to give it present effect, the deed is validly delivered.' (*Moore* v. *Trott,* 162 Cal. 275, [122 Pac. 462].)

"The deed here in question was handed by the grantor to the grantee. No third party was interposed as depositary. Before the signing of the deed James Reed had been advised that in order to pass title it was necessary for him to make delivery to the grantee. If Mr. Thompson had been allowed to testify as it was stated he would testify, the declaration of Mrs. Reed could have had no greater force than to show that the paper had been delivered to her upon the condition that, if she did not survive her husband, the property would not pass to her, but that, if he died first, the title should vest in her. No right to recall the deed or to revoke the delivery was retained. In one event title was to pass. In the other it was not. But it was not contemplated that under either, contingency anything further was to be done. If the fact upon which the title was to pass (i. e., the death of Reed during the life of his wife) should occur, the deed was to become operative by virtue of the delivery made on the twenty-first day of July, 1883, which was the only delivery which the parties ever had in mind. We have, then, the case of a delivery, *to the grantee,* upon a condition which may, according to the outcome, make the transfer effective or nugatory. Such a delivery, if made to a third party, might have been ineffectual. But where the deed is handed to the grantee personally. the situation is different. In that case, the condition is, by the law, discarded, and the delivery is regarded as absolute. Such is the express declaration of our statutes. Section 1056 of the Civil Code provides: 'A grant cannot be delivered to

the grantee conditionally. Delivery to him, or to his agent as such, is necessarily absolute, and the instrument takes effect thereupon, discharged of any condition upon which the delivery was made.' Under this section, the proof offered would not have justified the court in ruling that anything but an absolute delivery, free of condition, has been shown. The precise point was involved in *Mowry v. Heney,* 86 Cal. 471, [25 Pac. 17], and the court, there held, on a state of facts identical, so far as the point under discussion is concerned, with those here presented, that the deed was operative as an immediate, absolute conveyance. (See, also, *Elliott* v. *Merchants B. & T. Co.* 22 Cal. App. 536, [132 Pac. 280]; *Hammond* v. *McCullough,* 159 Cal. 639, [115 Pac. 216].)

"Such cases as *Kenney* v. *Parks,* 137 Cal. 527, [70 Pac. 556]; *Black* v. *Sharkey,* 104 Cal. 279, [37 Pac. 939], and *Denis* v. *Velati,* 96 Cal. 223, [31 Pac. 1], are not in conflict with the views herein expressed. In *Kenney* v. *Parks,* the parties were under the mistaken belief that a deed, although delivered, did not transfer title until recordation, a mutual mistake which, as is said in *Hammond* v. *McCullough,* 159 Cal. 639, [115 Pac. 216], 'conclusively established the absence of an intent to create a present and a new vestiture of title.' *Black* v. *Sharkey* and *Denis* v. *Velati* were decisions laying down the unquestioned rule that the manual tradition of a deed unaccompanied by the purpose or intention of passing title is not a good delivery. In none of these cases was the court dealing with a situation of a delivery made to the grantee, both parties intending, that in a certain event, title should pass by virtue of the delivery then and there made.

"The conclusion to be drawn from the foregoing discussion is that the facts contained in the opening statement of defendants, if proved, would not have raised a substantial conflict authorizing the jury to find against the plaintiff's claim of title. This being so, it was not error for the court to direct a verdict in plaintiff's favor. No other points are made."