190

SECURITY FENCE COMPANY

*v.*

MANCHESTER FEDERAL SAVINGS & LOAN ASSOCIATION.

Argued November 5, 1957.
Decided December 18, 1957.

*Devine & Millimet (Mr. Shane Devine* orally), for the plaintiff.

*Sheehan, Phinney, Bass, Green & Bergevin* and *Joseph F. Devan (Mr. Devan* orally), for the defendant.

Duncan, J. The Trial Court's ruling that the defendant is liable for conversion under RSA 337:21, 23 comes to this court unquestioned by either party. While the applicability of section 21 is not apparent (see Beutel's Brannan, Negotiable Instruments Law (7th *ed.*) 433), under section 23 the ruling establishes that the defendant acquired "no right to retain the instrument, or to give a discharge therefor" because the endorsement by the payee's agent was "without the authority of the person whose signature it purports to be" and was therefore "wholly inoperative." *S.* 23, *supra*. The liability thus established is the liability of the defendant bank to the plaintiff payee of the note. The surety company, having satisfied the payee's loss, now seeks by subrogation to enforce the latter's rights against the bank. Whether it may do so is the primary issue presented for the determination of this court.

The right of a surety upon satisfaction of his principal's obligation to be subrogated to the creditor's rights and remedies against the principal is well established. *McCullough* v. *Company*, 90 N. H. 409, 411; *Morrison* v. *Bank*, 65 N. H. 253, 280. That right, however, is apparently of small moment in the pending case because of the default of Hewett, who is primarily liable. The right of the surety to be subrogated to the creditor payee's rights against third persons stands upon a different footing. Since the purpose of subrogation is to place the responsibility where it ultimately should rest by compelling payment by the one who "in good conscience ought to pay it" (*Standard Accident Ins. Co.* v. *Pellecchia*, 15 N. J. 162, 171) it is generally held not to be available against a third party, if the equities in the latter's favor are equal or superior to those favoring the surety in respect to the liability involved. See 50 Am. Jur., Subrogation, 754, *s.* 111.

Hence, according to the view of many cases, a surety will not be subrogated to the rights of a creditor arising out of payment upon a forged or unauthorized endorsement unless the paying bank has

participated in the wrong or was negligent in paying the instrument. Restatement, Security, s. 141 (c). See *Meyers* v. *Bank of America*, 11 Cal. (2d) 92. In weighing the respective equities of the surety and the bank, it has been held that weight should be given to the circumstance that the former is a compensated surety. *Am. Bonding Co.* v. *First National Bank*, 27 Ky. 393; *Louisville Trust Co.* v. *Royal Indemnity Co.*, 230 Ky. 482. *Cf. Reynolds Metals Co.* v. *Liberty &c. Co.*, (Ky. App.) 294 S. W. (2d) 921. Other decisions representing a minority view have emphasized the legal liability of the bank to the payee, and permitted recovery by the surety without particular regard to comparative equities, in the interest of supporting the policy at law. See note, 12 Washington & Lee L. Rev. 132, 139, 140; *Standard Accident Ins. Co.* v. *Pellecchia, supra*, 185-187.

The surety in the case before us claims that the agreed facts establish the negligence of the defendant bank, and that the latter's equities are therefore inferior to those of the surety, so that the "compensated surety defense" does not apply and the surety should recover.

The defendant bank relying upon the absence of a finding of negligence, maintains that its equities are superior. It also takes the position that no occasion is presented for it to rely upon the "compensated surety defense" because the payee's loss did not result from its act of payment, but rather from the agent's unauthorized use of the proceeds after they came into the constructive possession of the plaintiff payee.

The payment of the money order by the bank upon the unauthorized endorsement of the agent clearly furnished the opportunity for misappropriation of the funds. Thus the bank may not reasonably be relieved of responsibility upon the theory that its conduct was not causal of the loss. Furthermore, for purposes of this case, its liability to the payee under the statute is established by rulings to which it has taken no exception. The issue before us is therefore confined solely to that of the surety's right of subrogation to the established right of the payee.

The defendant bank argues in support of the Trial Court's refusal to find it negligent that the payee "never gave the defendant bank any notice that Hewett did not have the right to cash the money order" and that limitations upon his authority "should not be binding upon the defendant which had no knowledge of the restriction."

This argument ignores the fundamental principle that one who deals with the agent of a disclosed principal is put upon notice of any limitation upon his authority. "When one does business with another through the latter's agent, it is necessarily to be understood that the agent's authority to bind the principal is not greater than that actually given . . . Without more, notice of an agency relation is notice of the limits of the agent's authority, whatever they may be." *Great Am. Ind. Co.* v. *Richard,* 90 N. H. 148, 150.

We take it to be similarly the established law in the field of bills and notes that "any person taking checks made payable to a corporation . . . does so at his peril and must abide by the consequences if the agent who indorses the same is without authority, unless the corporation is negligent . . . or is otherwise precluded by its conduct from setting up such lack of authority . . . . " *Standard S. S. Co.* v. *Corn Exchange Bank,* 220 N. Y. 478, 481. See also, *Blacker & Shepard Co.* v. *Granite Trust Co.,* 284 Mass. 9; Restatement, Security, s. 141, *supra,* illustration 17.

The agreed statement of facts contains no evidence that the defendant exercised any care to determine the extent of the authority of the payee's agent. His lack of authority is established by the finding of liability under RSA 337:23. Endorsement of the instrument by the agent as manager of the corporate payee was notice to the defendant bank of the agent's claim of authority to enforce the instrument in his principal's name. The endorsement was accepted by the bank without investigation of the claimed authority. See *Blacker & Shepard Co.* v. *Granite Trust Co., supra,* 14; *Rivers, Com'r* v. *Liberty Nat'l Bank,* 135 S. C. 107, 114. There was no evidence of prior dealings such as would warrant reliance upon any apparent authority. *Cf. Record* v. *Wagner,* 100 N. H. 419. It follows that the defendant bank may not successfully assert that its equities are equal or superior to those of the surety. Upon the facts stated a finding that its negligence contributed to the loss is compelled. Anno. 37 A. L. R. (2d) 453, 497-500; 5A Michie, Banks & Banking, 502-506.

It is accordingly unnecessary to determine the rights of the parties as if their equities were equal, or to rely upon the decision in *Standard Acc. Ins. Co.* v. *Pellechia,* 15 N. J. 162, *supra,* cited by the plaintiff, and recently characterized as marking "the end of the compensated surety defense in subrogation cases." 22 Ins. Couns. Jour. 453. But *cf.* Basye, "Some Aspects of a Fidelity Insurer's Rights by Subrogation," 43 Cal. L. Rev. 85. Whatever

the effect of *Pellecchia* in cases where the equities are equal, upon the facts of this case the right of the surety company to be subrogated to the payee's rights against the bank appears to be established under either the majority or minority view of the law.

In accordance with the stipulation of the parties, there should be a verdict for the plaintiff in the sum of $1,000.

*Exceptions sustained.*

All concurred.